**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MASSACHUSETTS**
**CENTRAL DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 13 |
| | ) | Case No. 11-44812-MSH |
| CARLOS R. SILVEIRA | ) | |
| FABIANA R. SOUZASILVEIRA | ) | |
| | ) | |
| Debtors | ) | |

**ADDENDUM TO MEMORANDUM AND ORDER ON SAMUEL L. RODRIGUEZ'S EMPLOYMENT AND COMPENSATION AS COUNSEL FOR THE DEBTORS**

The last sentence in the second-to-last paragraph on page 12 of the original memorandum and order on Samuel L. Rodriguez's employment and compensation as counsel for the debtors, dated June 18, 2012 [Docket #160] contains a typographical error.   The reference to $650 is hereby corrected to read "$850."

The memorandum and order, as corrected, is included below.

Dated: June 21, 2012

By the Court,

Melvin S. Hoffman
Bankruptcy Judge

1

**MEMORANDUM AND ORDER ON SAMUEL L. RODRIGUEZ'S EMPLOYMENT AND COMPENSATION AS COUNSEL FOR THE DEBTORS**

On May 1, 2012, I ruled in this case that Samuel L Rodriguez, the debtors' attorney, was disqualified from representing them due to a conflict of interest and a lack of disinterestedness. I ordered Mr. Rodriguez to disgorge the fees he had been paid by the debtors. On May 2, 2012, Mr. Rodriguez filed a motion seeking clarification or reconsideration of my May 1st order. On May 10, 2012, I entered an order granting Mr. Rodriguez's motion, vacating my order of May 1st and scheduling an evidentiary hearing to allow Mr. Rodriguez, the U.S. trustee and other interested parties to present evidence as to whether Mr. Rodriguez should be disqualified as the debtors' counsel and ordered to disgorge fees. On May 31, 2012, Mr. Rodriguez filed a motion seeking to withdraw his motion for reconsideration. After a hearing on June 4, 2012, at which Mr. Rodriguez acknowledged that by withdrawing his motion for reconsideration he was withdrawing his opposition to my prior ruling as to disqualification and disgorgement, I granted Mr. Rodriguez's motion to withdraw his motion for reconsideration. It is, therefore, necessary to reimpose the ruling of my May 1, 2012 order. In doing so I begin with my findings which are based upon affidavits, documents, the authenticity of which has been agreed to, and matters of record upon which I may take judicial notice.

On November 17, 2011, Mr. Rodriguez as counsel for the debtors, Carlos Silveira and Fabiana Souza Silveira, initiated this case by filing for them a voluntary petition under chapter 13 of the Bankruptcy Code, (11 U.S.C. § 101 *et seq*). Most of the documents required to accompany the bankruptcy petition were not included with the initial filing and on November 18, 2011, the Court entered its standard Order to Update requiring the debtors to file, among other

things, a matrix list of their creditors by November 23, 2011 and schedules of assets and liabilities, a statement of financial affairs ("SOFA"), a statement of attorney compensation and the chapter 13 agreement between the debtors and counsel, by December 2, 2011.

On November 26, 2011, this case was dismissed due to the debtors' failure to file the creditor matrix in accordance with the Order to Update. On December 7, 2011, the debtors through Mr. Rodriguez filed an amended motion to vacate dismissal[1] stating that Mr. Rodriguez had been experiencing difficulty trying to upload to the Court's docket the creditor matrix and that the debtors "should not bear the brunt of their counsel's difficulty with the [Electronic Case Filing] system." The motion was granted and the dismissal vacated. The creditor matrix was filed on December 7, 2011.

By separate order, the deadlines for the debtors to file the remaining documents required by the Order to Update was extended from December 2, 2011 to December 15, 2011. Without seeking a further extension of the deadline, on December 16, 2011, the debtors, through Mr. Rodriguez, filed their schedules of assets and liabilities and summary thereof but none of the other documents required by the Order to Update. On December 27, 2011, the Court issued an order requiring the debtors to appear at a hearing on January 10, 2012 to show cause why their case should not be dismissed again for failure to file the required documents.

On the day of the show cause hearing more documents, including the SOFA, were filed. In response to question nine of the SOFA, requesting the debtors to list payments made to any person in connection with bankruptcy or debt consolidation within the year prior to filing bankruptcy, they answered under penalty of perjury that they had paid an attorney, Michelle

---

[1] The original motion having been stricken due to an incorrect certificate of service.

Moreira, $1500 and an entity identified as the Alliance for Affordable Housing ("AFAH") $1200. No payment to Mr. Rodriguez was disclosed in the SOFA.

At the show cause hearing[2] Mr. Rodriguez, who appeared to be in some physical distress which he attributed to a severe asthma attack, sought to explain the highly chaotic administration of the case to date by assigning blame to others, primarily the debtors' prior counsel, Ms. Moreira. He stated that he had first met the debtors immediately prior to filing their chapter 13 petition, suggesting he had just become involved on their behalf and still needed time to get up to speed, and had not yet decided if he was going to charge them anything for his services. He stated that he had not billed them and had no intention of billing them until he figured out what had happened with respect to three prior cases filed for them by Ms. Moreira. As will become apparent, Mr. Rodriguez's representations at the January 10, 2012 hearing as to his legal fees were at best misleading.

At the conclusion of the hearing I ordered Mr. Rodriguez to file by January 17, 2012, the two documents which remained unfiled and overdue under the Order to Update—the Statement of Attorney Compensation, commonly referred to as the Rule 2016(b) Statement, and the Chapter 13 Agreement between the debtors and counsel, commonly referred to as the Local Form 8 Certification.

On January 17, 2012, Mr. Rodriguez filed the first of his three Rule 2016(b) Statements (the "First Rule 2016(b) Statement") [docket #41] and his Local Rule 8 Certification [#42].

In his First Rule 2016(b) Statement Mr. Rodriguez certified that he had agreed to accept $500 for legal services in connection with this chapter 13 case but that he had received no fees as

---

[2] Also on for hearing was the debtors' motion to reimpose the automatic stay which, as a result of multiple prior bankruptcy filings, had, pursuant to Bankruptcy Code § 362(c), not taken effect.

4

of the date of the certification. Mr. Rodriguez certified that the source of his future payment of $500 was to be the debtors and that he had not agreed to share his fees with anyone not associated with his law firm. Despite certifying earlier on the form that he had received no payments prior to the filing of the Rule 2016(b) Statement he also certified that he had in fact received compensation in an undisclosed amount from "Home Defenders Fund."

The meeting of creditors in this case under Bankruptcy Code § 341 took place on January 30, 2012. This was the first opportunity for the debtors, who were accompanied by Mr. Rodriguez, to be examined under oath concerning, among other things, their transactions with Ms. Moreira, their prior attorney, Mr. Rodriguez, AFAH and Home Defenders Fund.

The debtors' testimony at the § 341 meeting prompted the U.S. trustee to file two motions on February 10, 2012, a motion seeking an order requiring Ms. Moreira to disgorge the fees paid to her by the debtors [#50] and a motion for an order compelling Mr. Rodriguez to file an amended Rule 2016(b) Statement and supplemental affidavit concerning the sources of compensation paid and to be paid to him [#52].

In its motion regarding Mr. Rodriguez, the U.S. trustee attached a transcript of the debtors' § 341 meeting testimony. Based on the debtors' testimony, the U.S. trustee alleged in its motion that the debtors had not engaged Mr. Rodriguez to represent them in this case but rather, as a result of the foreclosure of their home, sought assistance from AFAH or another entity called Alliance for Hope and were referred to Mr. Rodriguez by one of those entities. The U.S. trustee also alleged, based on Mr. Rodriguez's statements at the § 341 meeting and his affidavits filed in unrelated bankruptcy cases in this district, that Mr. Rodriguez's disclosure of

5

compensation in his Rule 2016(b) Statement in this case was wholly inaccurate because Mr. Rodriguez had an agreement with AFAH or some other entity for that entity to pay his legal fees.

In response to the U.S. trustee's motion, on February 15, 2012, Mr. Rodriguez filed an amended Rule 2016(b) Statement [#64] (the "Second Rule 2016(b) Statement") along with a supplemental affidavit [#65] in connection therewith. In his Second Rule 2016(b) Statement Mr. Rodriguez increased the amount he certified he had agreed to accept for legal services from $500 as set forth in his First Rule 2016(b) Statement to $850, disclosed that prior to the filing he had been paid $200 rather than zero and that the source of both the prior and future payments was the Home Defenders Fund. In his affidavit accompanying the Second Rule 2016(b) Statement Mr. Rodriguez stated that he was asked to assist the debtors by AFAH, that the debtors had paid money to a fund maintained by AFAH called the Home Defense Fund (sic) and that Mr. Rodriguez sent invoices to AFAH for legal services on behalf of the debtors for payment out of the Home Defense Fund.

A hearing on the U.S. trustee's motion to compel disclosure by Mr. Rodriguez took place on March 6, 2012. Because of the discrepancies between Mr. Rodriguez's First and Second Rule 2016(b) Statements and a lack of clarity as to the relationships among him, AFAH and the debtors, I ordered Mr. Rodriguez to file, by March 28, 2012, an amended Rule 2016(b) Statement along with detailed backup documentation to explain his and the debtors' relationships with AFAH and how fees were paid and shared.

On March 28, 2012, Mr. Rodriguez filed an amended Rule 2016(b) Statement [#104] (the "Third Rule 2016(b) Statement") as well as a second supplemental affidavit [#103]. The Third Rule 2016(b) Statement differed materially from the prior two. While Mr. Rodriguez certified

6

that he had agreed to accept a total of $850 for his services to the debtors and that $200 had been paid pre-petition (consistent with the Second Statement but not the First) he now asserted, contrary to the First and Second Rule 2016(b) Statements, that he had been paid the entire $850 by Home Defenders Fund.[3] Despite being ordered to do so in my March 21, 2012 order, neither the Third Rule 2016(b) Statement nor the second supplemental affidavit is accompanied by any documentation shedding light on the relationships among the debtors, AFAH and Mr. Rodriguez, or explaining the discrepancies among the various Rule 2016(b) Statements.

On the same date that he filed his Third Rule 2016(b) Statement and second supplemental affidavit Mr. Rodriguez filed on behalf of the debtors a motion that AFAH be ordered to return funds to the debtors and render an accounting of all sums expended [#102] (the "AFAH Turnover Motion"). In the AFAH Turnover Motion the debtors allege that they paid AFAH a total of $4349 ($800 prepetition and $3549 postpetition), that AFAH paid Mr. Rodriguez $850 plus the bankruptcy court filing fee of $281 from such funds, and that the balance of $3218 remaining with AFAH should be refunded to the debtors. Attached to the AFAH Turnover Motion are documents which shed light on the relationship between the debtors, AFAH and Mr. Rodriguez.[4]

---

[3] While hardly self-evident, it is possible that the difference between the Second and Third Rule 2016(b) Statements is that during the approximately five weeks between the filing of the two Statements, Mr. Rodriguez was paid $650 by Home Defenders Fund. Attached to Mr. Rodriguez's first supplemental affidavit dated February 15, 2012 [#65] are a series of invoices from him to AFAH including one dated February 12, 2012 seeking $650 for legal services provided to the debtors.

[4] A review of the docket in this case reveals a dismaying pattern of substandard pleading practice by Mr. Rodriguez, with multiple pleadings being incorrectly filed, lacking proof of service or requiring amendment or reconsideration. It is entirely possible, therefore, that the documents Mr. Rodriguez attached to the AFAH Turnover Motion were intended to comply with my order of March 21, 2012 requiring Mr. Rodriguez to file documents concerning the

Included among the attachments to the AFAH Turnover Motion are two documents dated October 5, 2011. Each document contains three signature lines, one for each debtor and one for the authorized representative of Homeowners Defense Fund. The first document consists of two pages, the first of which looks like letterhead of AFAH. The first line of text, typed in bolded capital letters, begins: "FAIR SHARE PAYMENT PLAN AUTHORIZATION AND CONTRACT." (For ease of reference I will refer to this document as the "Fair Share Payment Document.") The Fair Share Payment Document is signed only by the co-debtor, Carlos Silveira. It is a mishmash of confusing references to undefined terms (capitalized for no apparent reason other than to create the impression of weight and authority), misspellings, pseudo-legalese and long sentences that lead nowhere. The opening paragraph is illustrative:

> FAIR SHARE PAYMENT PLAN AUTHORIZATION AND CONTRACT: Whereas the client/co-clients seek assistance in developing affordable home retention or property recovery and have not been making mortgage FairShare Payment Plans to the current service/lender/investor and/or have been foreclosed thereon and wish to establish a FairShare Payment Plan to cover the costs or expenses of the non-profit Alliance for Affordable Housing, Inc. Team . . . .

The second document consists of one page, also appearing to be on AFAH letterhead, whose first line of text typed in bolded capital letters begins "LEGAL AUTH (sic) FORM." (For ease of reference I will refer to this document as the "AFAH Authorization Document.") The AFAH Authorization Document, like the AFAH Payment Document, is signed only by the co-debtor, Carlos Silveira, and exhibits the same hallmarks of confusing, self-serving and at bottom meaningless legalese as its companion.

The AFAH Authorization Document states that Mr. Silveira:

---

relationship among the parties.

authorize(s) Homeowners Defense Fund to refer to, or to request review of, my documents or file by *their* (sic) *designated Legal Counsel* at any time as reasonably necessary to preserve my best legal interests, including the review of all documents prior to any submission to Lender / Servicer / Investor and to have Legal Counsel review all proposed offers for loan resolution from the Lender / Servicer / Investor prior to consummation by my signature. I further authorize Homeowners Defense Fund to allow Legal Counsel to speak directly to the Bank / Servicer / Investor and have signed separate authorization as confirmation of this authority. I further authorize Homeowners Defense Fund to assign, transfer or copy the client's file to Legal Counsel in the event I require Bankruptcy, Litigation or other legal intervention to preserve or recover my property and exercise my legal rights.

(Emphasis added).

The AFAH Payment Document states that:

Alliance for Affordable Housing, Inc. Team shall analyze expert reports, securitization forensic audits, title research and determines in consultation with client/clients the necessary, reasonable or advisable services. The assigned legal counsel will implement the plan to preserve or recover client/client's equitable interest. Alliance for Affordable Housing, Inc. Team or *it's* (sic) *counsel* and/or other providers will oversee and manage its implementation.

(Emphasis added).

The foregoing facts lead me to the following conclusions. Taken together the AFAH Authorization Document, the AFAH Payment Document and the invoices submitted by Mr. Rodriguez to AFAH establish that Mr. Rodriguez was part of AFAH's "legal team" and was designated by AFAH to represent the debtors. Further, Mr. Rodriguez was receiving compensation for his legal services by billing AFAH who would pay him from funds paid to AFAH by its clients, which included the debtors.

Mr. Rodriguez's representation of the debtors began on November 7, 2012, the date of commencement of this case. As stated in his affidavit in support of the Second Rule 2016(b)

9

Statement, Mr. Rodriguez met the debtors for the very first time on the petition date. His representation of AFAH began prior to that time. According to the AFAH Payment Document "Alliance for Affordable Housing Team or it's (sic) counsel and/or other providers will oversee and manage" the implementation of the debtors' plan to preserve or recover assets. Mr. Rodriguez served as AFAH's counsel in this regard. Also, under the AFAH Authorization Document Mr. Silveira authorized AFAH "to refer to or to request review of my documents or files by their (sic) Legal Counsel at any time as reasonably necessary to preserve my best legal interests." Finally, Mr. Rodriguez billed AFAH for his services. Exhibit B to Mr. Rodriguez's affidavit filed in support of his Second Rule 2016(b) Statement contains invoices from Mr. Rodriguez to AFAH for services rendered. A November 27, 2011 invoice states:

> This letter constitutes the initial invoice for my services. Per my understanding, I will receive $200 to review a Chapter 13 filing of petition, schedules and plan. I will also receive $500 for preparing and attending the meeting of creditors for each Chapter 13 case. The fee for attending the creditors meeting under Chapter 7 is less at $300 per meeting. In addition for adversarial proceedings and other court appearances I will receive $75 an hour. There is a total cap for Chapter 13 cases of $1,000 unless there are extraordinary circumstances.

The invoice is for $1600 based on Mr. Rodriguez's review and filing of eight chapter 13 petitions at $200 per petition. One of those petitions is identified as that of Carlos Silveira, one of the debtors here. I find, therefore, that on November 7, 2012, the date of the debtors' bankruptcy, Mr. Rodriguez had two clients, AFAH and the debtors.

The Bankruptcy Code imposes exacting standards on eligibility and compensation of professionals who render services in bankruptcy cases:

> Section 329 requires debtor's counsel to disclose to the court the amount and the source of any compensation that counsel has received, or expects to receive, from

> the client for the year that preceded the bankruptcy petition. *See* 11 U.S.C. § 329. Professionals employed in bankruptcy cases are subject to "particularly rigorous conflict-of-interest restraints," *Rome,* 19 F.3d at 57, whereby they must not evidence "even [an] appearance of impropriety," *id.* at 58 (internal quotation marks and citation omitted). The bankruptcy court has continuing authority to revisit an order employing a particular attorney to represent a debtor. *See* 11 U.S.C. § 328(c); *see also Rome,* 19 F.3d at 58; *In re Hot Tin Roof, Inc.,* 205 B.R. at 1003. Every potential conflict must be disclosed, and upon finding that counsel has failed to comply, the bankruptcy judge can impose various remedies, including disqualification of counsel and the denial of fees.

*In re Indep. Eng'g Co.*, 197 F.3d 13, 17 (1st Cir. 1999).

Under Rule 1.7 of the Massachusetts Rules of Professional Conduct[5]:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
>> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>>
>> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the representation of that client may be materially limited by the lawyer's responsibilities to another client or to a third person, or by the lawyer's own interests, unless:
>
>> (1) the lawyer reasonably believes the representation will not be adversely affected; and
>>
>> (2) the client consents after consultation. When representation of multiple clients in a single matter is undertaken, the consultation shall include

---

[5] Contrary to the ruling in my May 1, 2012 order, chapter 13 debtors' counsel, like their chapter 7 counterparts, are not subject to the disinterestedness requirements of Bankruptcy Code §327:

> Congress chose not to extend the disinterestedness requirement to chapter 7 cases because the interests of creditors would not be affected—there is a bankruptcy fiduciary called the bankruptcy trustee to protect their interests. Implicitly, Congress left this conflicts issue to be resolved by the local rules of professional conduct. *See Bagdan v. Beck,* 140 F.R.D. 650 (D.N.J.1991).

*In re DiLoreto*, 277 B.R. 607, 614 (Bankr. E.D. Pa. 2000).

11

>explanation of the implications of the common representation and the advantages and risks involved.

I find that as a result of the AFAH Turnover Motion the debtors and their bankruptcy estate on the one hand and AFAH on the other became directly adverse in this case. The fact that the AFAH Turnover Motion has recently been resolved by AFAH's being ordered to and ultimately paying the debtors the $3218 it had been holding does not purge Mr. Rodriguez's conflict. AFAH's conduct with respect to the debtors and other consumers has been extremely problematic. The U.S. trustee is currently conducting an investigation of AFAH. It is likely that the debtors' estate may yet have additional claims to assert against AFAH. In light of this I find that Mr. Rodriguez has a continuing conflict.

I also find that Mr. Rodriquez's disclosure of the nature and terms of his compensation as counsel for the debtors in this case has been lacking in completeness and candor. Further, he has put the U.S. trustee and the court through a great deal of wasted time and effort in a frustrating attempt to extract from him a coherent and accurate explanation of his relationship with the debtors and AFAH and how and when he was paid. As a consequence, most of the work performed by Mr. Rodriguez in this case has been devoted to issues related to him rather than to advancing the debtors' chapter 13 case. The quality of the work performed by Mr. Rodriguez has often been substandard, with numerous pleadings being stricken or denied due to basic errors such as improper electronic filing or lack of service. The debtors should not be required to pay for all of this. They will need to hire a competent successor to Mr. Rodriguez, who will no doubt be required to repair and remedy much of what Mr. Rodriguez has wrought. They will need funds to pay this successor. It is appropriate, therefore, both as a sanction and because he did not

earn it, to require Mr. Rodriguez to disgorge and return to the debtors the $850 fee he has received for representing them.

Based on all of the foregoing, it is hereby ORDERED that Mr. Rodriquez is disqualified as counsel to the debtors in this case and that by no later than July 5, 2012, Mr. Rodriquez shall pay to the debtors $850, representing a return of the fees he has previously received.

At Worcester, Massachusetts this 18th day of June, 2012.

By the Court,

Melvin S. Hoffman
Bankruptcy Judge

Counsel Appearing:   Samuel L. Rodriguez
                     Acton, MA
                     for the debtors

                     Jennifer Hertz
                     for the United State Trustee

13